## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| RAYMOND LACEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 2:12-cv-02051-SGC |
| | ) | |
| ALLSTATE INDEMNITY COMPANY, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION[1]

Plaintiffs Raymond and Sherry Lacey initiated this action against their insurer, Allstate Indemnity Company ("Allstate"), and their insurance agent, The Carbonie Agency, in the Circuit Court of Jefferson County for state-law claims of breach of contract, bad faith, misrepresentation, negligence, and emotional distress.  (Doc. 1).  Shortly after removal, the Laceys voluntarily dismissed The Carbonie Agency.  (Doc. 4, 5).  Allstate now seeks summary judgment on the Laceys' claims.  (Doc. 14).  The motion is fully briefed and ripe for review. (Docs. 14-1, 19, & 20).  For the reasons stated below, Allstate's motion for summary judgment will be **GRANTED**.

### I. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 10).

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 447 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Factual Background

This case arises out of property damage from the April 27, 2011 storm in Jefferson

County.  At the time of the loss, the Laceys had in effect a homeowner's insurance policy issued by Allstate.  (Doc. 15-1).[2]  On April 28, 2011, the Laceys notified Allstate of the loss, and Allstate began processing the claim.  (Doc. 15-2).  Allstate assigned adjuster O'Dell Clayton and content specialist Kelli Dunn to inspect the loss and begin the claims process.  (*Id.* at 5, 21-22).  After the inspection on May 9, 2011, Clayton recommended a check be issued to the Laceys in the full amount of dwelling coverage, and on May 16, 2011, Allstate issued the check.  (*Id.* at 12; Doc. 15-3).  Before receiving the contents inventory, Allstate paid 25% of the personal property limits to the Laceys on May 17, 2011, pursuant to an Advanced Payment Agreement, which reserved all rights and requirements under the insurance contract, explicitly naming the rights to receive proof of loss and to request an examination under oath.  (Doc. 15-4; Doc. 15-5).  On June 6, 2011, Allstate issued a check for the full amount of Other Structures coverage.  (Doc. 15-6).

On August 15, 2011, the Laceys submitted their completed contents inventory to Allstate with their remaining personal property claim.  (Doc. 15-2 at 41-42).  On September 13, 2011, Dunn noted some of the descriptions of the furniture and other items in the house did not match the photos contained in Allstate's file (which included photos taken after the 2011 storm and earlier ones taken after water damage in 2009).  (*Id.* at 48; Doc. 16-3).[3]  Due to the alleged discrepancies in the contents inventory, Allstate referred the Laceys' claim to the Special Investigation Unit (SIU).  (Doc. 15-2 at 49).  Allstate adjuster Nicholas Byrd was assigned to investigate.  (*Id.* at 51).  He spoke with Mrs. Lacey about the alleged discrepancy and obtained a

---

[2] All citations to the record refer to document and page numbers assigned by the Court's electronic filing system, except for citations to depositions, which also include a parenthetical with the deposition page number(s).

[3] The Laceys contend both sets of photographs of the interior of the home were incomplete and some were labeled incorrectly.  (Doc. 19 at 5-6).  They do not dispute that the inventory did not match the photos contained in Allstate's file.

recorded statement.  (*Id.* at 52).  Based on that conversation and the alleged discrepancy between the inventory and the photos, coverage attorney Mark Hart was contacted to conduct an examination under oath ("EUO").  (*Id.* at 53-54).  On October 11, 2011, Hart contacted the Laceys to schedule their EUO for October 25, 2011.  (Doc. 17-2; Doc. 16-2 at 11 (37)).

On October 24, 2011, Mr. Lacey contacted SIU adjuster Byrd and asked about the purpose of the EUO.  (Doc. 15-2 at 56).  When Byrd said it was to ask them about items he could not verify on their inventory, Byrd documented Mr. Lacey as saying "that maybe [Mrs. Lacey] put something different because they had heard that Allstate takes a lot of depr[eciation] on items and they would not have enough money to replace the items they had."  (*Id.*).  Mr. Lacey denies saying items were added to the list that were not in the home.  (Doc. 17-3 at 17 (64)).  It is unclear what exactly was said during this conversation, but pursuant to the standard of review, the court assumes Mr. Lacey did not say Mrs. Lacey had claimed something different from what they actually owned.  Ultimately, Mr. Lacey did tell Byrd they would not sit for the EUO, and the Laceys, in fact, did not appear on the scheduled date.  (*Id.*; Doc. 16-2 at 11 (38)).

After the Laceys did not sit for the EUO, Hart reviewed the claim and recommended the remainder of the Laceys' claim be denied: (1) for failure to appear for an EUO, a condition precedent under the policy; and (2) under the "Concealment Or Fraud" provision of the policy. (Doc. 17-5).  After receiving the letter from Hart, Allstate denied the remainder of the Laceys' claim.  (Doc. 17-6).[4]

### III. Analysis

Allstate has moved for summary judgment as to all five claims of the Laceys' complaint

---

[4] The Laceys deny they made any misrepresentations, that an EUO was appropriate, and that Allstate's reliance on its counsel's recommendation is evidence, but they do not deny Hart made the recommendation or that Allstate relied on it.  (Doc. 19 at 15-16).

(Doc. 14), but the Laceys have responded with arguments as to only the first two (Doc. 19 at 18-31).   They merely ask the court to view Allstate's requests for dismissal of all the claims "through the lens" of their arguments on the first two.  (*Id.* at 31).  After reviewing all of the arguments, it is clear the Laceys have not established a question of material fact as to any of their claims, and Allstate is, therefore, entitled to summary judgment on all five claims.

### A.  Count I – Breach of Contract

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Sirmon v. Wyndham Vacation Resorts, Inc.*, 922 F. Supp. 2d 1261, 1287 (N.D. Ala. 2013) (quoting *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)).  Allstate contends the Laceys' breach of contract claim must fail for two reasons: (1) there was no coverage under the policy where the insured has misrepresented a material fact and, therefore, there was no nonperformance; and (2) the Laceys did not perform under the contract when they failed to meet the condition precedent of submitting to an examination under oath.  (Doc. 14-1 at 14-22).  The Laceys argue they did not intentionally misrepresent anything to Allstate and they were not required to sit for an EUO because Allstate did not have a reasonable basis to invoke the EUO clause.  (Doc. 19 at 22-31).

Allstate's first reason fails because it requires a finding the Laceys intentionally misrepresented a material fact.  (*See* Doc. 20 at 13) (in which Allstate acknowledges Ala. Code § 27-14-28 requires, to defeat or void the policy, a misrepresentation be made with actual intent to deceive as to a matter material to the insured's rights under the policy).  There is a question of fact on that issue because Allstate relies for its allegations of intentional misrepresentation on both: (1) discrepancies between the Laceys' inventory and the photos in Allstate's file (*id.*),

which the Laceys argue are incomplete and mislabeled (Doc. 17-3 at 28-29 (105-109)); and (2) the statements of Mr. Lacey to Byrd (Doc. 20 at 13), which Mr. Lacey has since disputed making (Doc. 17-3 at 17 (64)).  As a result, Allstate is not entitled to judgment as a matter of law on this basis.

The circumstances underlying Allstate's second reason, however, are mostly undisputed. The Laceys admit they did not appear for the EUO (Doc. 16-2 at 11 (38)), and they do not dispute that their inventory does not match the photos appearing in Allstate's file (*see* Doc. 19 at 5-6).  Instead, the Laceys argue they were not required to appear for the EUO because Allstate did not have a "reasonable basis" to invoke the EUO clause of the policy.  (Doc. 19 at 29-31).

The Laceys assert Allstate does not have an unfettered right to conduct an EUO where "the circumstances potentially giving rise to such have been unequivocally disputed, *under oath*; rather, such request must be reasonable."  (Doc. 19 at 30).  To support this proposition, the Laceys cite a duty-of-cooperation case, which states the insured's conduct is to be given a "reasonable construction."   (*Id.*) (citing *Employers Ins. Co. v. Brooks,* 33 So. 2d 3, 5 (Ala. 1947)).  It is unclear how this case establishes that Alabama law concurs with the Laceys' legal proposition, particularly in light of the Alabama Supreme Court's holding in *Nationwide Insurance Co. v. Nilsen* that a substantially similar EUO provision to the one in this case "established, as a strict condition precedent to [the insurer]'s liability under the contract, that [the insured] submit to an examination under oath."  745 So. 2d 264, 267 (Ala. 1998).  Ultimately, the *Nilsen* court concluded that, "[b]ecause it [was] undisputed that [the insurer] requested that [the insured] submit to an examination under oath and that [the insured] failed to do so before filing this action, . . . [the insured] failed to comply with a condition precedent to recovery under the contract."  *Id.* at 269 (affirming summary judgment in favor of the insurer).  The *Brooks* case,

on the other hand, was from well before *Nilsen*, did not address examinations under oath as conditions precedent, and merely held that, regarding the general duty of cooperation, only an insured's conduct, not his thoughts or desires, was material to the issue.  33 So. 2d at 5-6.[5]

The Laceys attempt to distinguish the *Nilsen* case by stating they "squarely disputed, *under oath*, the alleged misrepresentation giving rise to Allstate's request to conduct an EUO." (Doc. 19 at 29).  They assert that fact, in combination with the fact the home was completely destroyed and the photos were incomplete and mislabeled, make it unreasonable for Allstate to have requested an EUO.  (*Id.* at 29-30).  Nothing about this distinguishes *Nilsen*.  In fact, the court in *Nilsen* explicitly rejected the argument that deposition testimony in subsequent litigation was sufficient to satisfy the EUO provision because, where a deposition is designed to gather information after the insured has denied the claim, an EUO is part of the investigation process and the insurer has the right to seek all information regarding the insured's claim before making an adequate determination of its obligations.  *See* 745 So. 2d at 268-69.

Furthermore, it is unclear how the total destruction of the house and the allegedly incomplete photos distinguish the *Nilsen* court's holding.  First of all, the facts in *Nilsen* involved a house "destroyed by fire," *id.* at 265, which, if it had any relevance to the question, presumably would have been addressed.  To the contrary, the *Nilsen* court made it clear that submitting to an EUO was a strict condition precedent to recovery under the insurance contract, and the Laceys present no explanation for why the facts they cite distinguish *Nilsen* from this case.  Moreover,

---

[5] In *Ex parte Clarke*, 728 So. 2d 135 (Ala. 1998), handed down shortly after *Nilsen*, the Alabama Supreme Court addressed an EUO provision and a duty-of-cooperation provision separately in reversing summary judgment.  *Id.* at 141.  The court cited long-established law for the proposition that cooperation was generally a question of fact, but in regards to the EUO provision, it distinguished *Nilsen* on the grounds that, unlike in *Nilsen*, it was a disputed question of fact whether the EUO provision was even part of the contract.  *Id.* at 139-40.  The Laceys have not asserted the EUO provision was not part of the contract or that it was sufficiently different in language so that it does not fall under *Nilsen*.

even assuming a reasonable basis was required, the fact that the home was completely destroyed and the photos were incomplete and allegedly mislabeled gave Allstate an even stronger basis for seeking testimony from the Laceys under oath because it was being asked to rely exclusively on the unverifiable inventory of the people having the most to gain from misrepresentation.  The Laceys give no support, legal or logical, to support their contrary contention.

As in *Nilsen*, it is undisputed here that the insurance contract contained a provision (substantially similar to the one in *Nilsen*) requiring the insured to submit to an EUO after a loss (Doc. 15-1 at 23); that Allstate requested the Laceys submit to an EUO (Doc. 17-2; Doc. 16-2 at 11 (37)); and that the Laceys refused to do so (Doc. 16-2 at 11 (38)).  To paraphrase the Alabama Supreme Court from *Nilsen*, "[b]ecause it is undisputed that [Allstate] requested that [the Laceys] submit to an examination under oath and that [the Laceys] failed to do so before filing this action, . . . [the Laceys] failed to comply with a condition precedent to recovery under the contract."  Therefore, Allstate is entitled to summary judgment on the Laceys' claim for breach of contract.

### B.  Count II – Bad-Faith Refusal to Pay

In Alabama,

> the tort of bad-faith refusal to pay a claim has four elements—(a) a breach of insurance contract, (b) the refusal to pay the claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence—with a conditional fifth element: (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013) (internal quotation marks omitted).  In the instant case, the court has already determined that Allstate has not breached the insurance contract; therefore, the Laceys' claim for breach of contract must fail.

However, even if Allstate had breached the contract, it also had an arguable reason to

refuse to pay the claim.  To show a prima facie case of the absence of an arguable reason to deny payment, "the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law," and the insurer "must be judged by what was before it at the time the decision was made."  *Ins. Co. of N. Am. v. Citizensbank of Thomasville*, 491 So. 2d 880, 883 (Ala. 1986).  Even assuming the Laceys were correct on the EUO issue, they have, at most, created a question of fact on the issue of their alleged misrepresentations and, therefore, would not be entitled to recover on the breach-of-contract claim as a matter of law.

First, although the Laceys contend Allstate is incorrect about why there are differences between the Laceys' inventory and the photos in Allstate's file, they do not dispute that the photos show rooms of the Laceys' house that do not include some of the furniture listed in the inventory.  (Doc. 19 at 5-6).  The fact that the Laceys may have reasonable explanations for the differences between what can be seen in the photos and what is listed on the inventory does not negate the existence of those differences.  Moreover, the Laceys refused to sit for the EUO in which Allstate could have asked about those explanations for the differences.  Second, Allstate has presented evidence that Mr. Lacey made statements that would indicate the inventory included furniture that was not in the home at the time of the storm.  (Doc. 15-2 at 56).[6]

---

[6] The Laceys make an offhand comment asserting this evidence is compound hearsay but do not go into detail on that issue other than to say Mr. Lacey's testimony is to be given more weight.  (Doc. 19 at 24).  Of course, on a motion for summary judgment, the Court does not weigh the evidence, and any valid evidence can create a question of fact.  With that in mind, Allstate's evidence does not appear to be inadmissible hearsay because both sides rely on the document submitted (Allstate's Claim History Report, (Doc. 15-2)) as proper evidence (*see, e.g.*, Doc. 14 at 5; Doc. 19 at 3) (presumably as a business record, *see* Rule 803(6), FED. R. EVID.), and it records the statement of a party-opponent, *see* Rule 801(d)(2), FED. R. EVID.  It is irrelevant whether what Mr. Lacey said about Mrs. Lacey is admissible evidence of what she actually thought or did because, at least on this issue, it is being submitted to prove Allstate's good-faith belief that the Laceys had misrepresented their inventory, not that they actually did.

Although Mr. Lacey subsequently denied having made that statement, the Laceys would not be entitled to a judgment as a matter of law on the question, especially on the evidence before Allstate at the time of the denial.

As a result, the Laceys cannot make a prima facie showing of either a breach of contract by Allstate or the absence of an arguable reason to deny payment.  Accordingly, Allstate is entitled to summary judgment on the Laceys' claim for bad-faith refusal to pay.

### C.  Count III – Misrepresentation

The Laceys do not directly address this claim in their response to Allstate's motion for summary judgment, but their complaint alleges that Allstate represented to the Laceys through the terms of its insurance contract that the contract provided coverage for the loss of personal property due to events such as the April 2011 storm, that the Laceys relied on that representation in paying their premiums, that Allstate intentionally defrauded the Laceys "by allowing them to purchase their Policy, and then, refusing to pay the full value of [the Laceys'] claims," and that the Laceys were damaged.  (Doc. 1-1 at 11).

> Under Alabama law, the elements of fraudulent misrepresentation are
>
> (1) a false representation (2) of a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result of the misrepresentation.  If fraud is based upon a promise to perform or abstain from performing in the future, two additional elements must be proved: (1) the defendant's intention, at the time of the alleged misrepresentation, not to do the act promised, coupled with (2) an intent to deceive.

*Robinson v. Sovran Acquisition Ltd. P'ship*, 70 So. 3d 390, 396 (Ala. Ct. Civ. App. 2011) (quoting *Coastal Concrete Co. v. Patterson*, 503 So. 2d 824, 826 (Ala. 1987)) (internal citations omitted).  When dealing with fraud claims arising out of breaches of contract, the two additional elements are required, and "[f]ailure to perform alone is not sufficient evidence to show a present intent not to perform" because, "[i]f it were, then every breach of contract would be tantamount

to fraud." *Heisz v. Galt Indus., Inc.*, 93 So. 3d 918, 925 (Ala. 2012).

The Laceys have not presented any evidence that Allstate did not intend, at the time of the alleged misrepresentation, to pay for loss of personal property under the insurance contract. At most, the Laceys have presented evidence to support an allegation Allstate ultimately breached its contract with them, but failure to perform is insufficient to show Allstate did not intend to perform at the time of making the contract. The Laceys present no evidence regarding Allstate's intent at the time of contracting.

Moreover, the Laceys have failed to create a question of fact regarding the alleged misrepresentation. They have alleged Allstate misrepresented that it would pay for their losses of personal property (Doc. 1-1 at 11); however, they have failed to show that Allstate would not have performed under the insurance contract if the Laceys had met the conditions precedent for it to do so. As a result, the Laceys have failed to present any evidence to support the conclusion their insurance contract with Allstate did not cover their loss of personal property to the extent its terms required.

Accordingly, Allstate is entitled to summary judgment on the Laceys' claim for fraudulent misrepresentation.

### D.  Count IV – Negligence

The Laceys do not directly address their negligence claim in their response to Allstate's motion for summary judgment either, but their complaint alleges that Allstate had a duty to pay the Laceys' claim and it breached that duty when it failed to pay. (Doc. 1-1 at 12-13). However, the Alabama Supreme Court "has consistently refused to recognize a cause of action for the negligent handling of insurance claims." *Kervin v. S. Guar. Ins. Co.*, 667 So. 2d 704, 706 (Ala. 1995). Accordingly, Allstate is entitled to summary judgment on the Laceys' claim for

negligence.

### E.  Count V – Emotional Distress/Mental Anguish

The Laceys last claim is for emotional distress and mental anguish.  (Doc. 1-1 at 13).

However, no such cause of action appears to exist in Alabama, *see Whaley v. Sony Magnetic*

*Products, Inc. of Am.*, 894 F. Supp. 1517, 1525 (M.D. Ala. 1995); instead, mental anguish and

emotional distress are a type of compensatory damages, *see White Sands Grp., L.L.C. v. PRS II,*

*LLC*, 32 So. 3d 5, 17 (Ala. 2009) (listing emotional distress as non-punitive damages available

for interference with a business relationship); *George H. Lanier Mem'l Hosp. v. Andrews*, 901

So. 2d 714, 725 (Ala. 2004) ("It is well settled that a plaintiff may recover compensatory

damages for mental anguish, even when mental anguish is the only injury visited upon the

plaintiff.").  While Allstate argues as much in its motion for summary judgment (Doc. 14-1 at 10

n.1), the Laceys do not contradict that argument with one of their own (*see* Doc. 19 at 31).  As

the Laceys have proven no other causes of actions, they are not entitled to damages for emotional

distress and mental anguish.

However, when presented with a similar claim, the court in *Whaley* liberally construed a

plaintiff's claim for mental anguish as one for outrage, or intentional infliction of emotional

distress.  *See* 894 F. Supp. at 1525.  Even if the court were to do the same here, the Alabama

Supreme Court has so far restricted that claim to only a few "egregious circumstances," such as

wrongful conduct in the context of family burials, cases of "egregious sexual harassment," a case

where insurance agents used "barbaric means" to coerce settlement,[7] and a case where a

physician traded drugs for sexual favors with a teenage boy, resulting in the boy's addiction to

---

[7] These "barbaric means" included death threats toward the plaintiff and his children and
manufacturing evidence to have plaintiff indicted for arson.  *See Nat'l Sec. Fire & Cas. Co. v.
Bowen*, 447 So. 2d 133 (Ala. 1983).

drugs. *Ex parte Bole*, 103 So. 3d 40, 53 (Ala. 2012). The facts of this case do not fall into any of these categories nor even come close to similar "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1043-44 (Ala. 1993).

Accordingly, Allstate is entitled to summary judgment on the Laceys' claim for mental anguish and emotional distress.

## IV. Conclusion

Based on the foregoing, Allstate's motion for summary judgment (Doc. 14) is **GRANTED**, and the Laceys' claims are due to be **DISMISSED WITH PREJUDICE**. A separate order will be entered.

**DONE** this 2nd day of March, 2015.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE